# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

JOHN G.,                          )
                                  )
                    Plaintiff,    )
                                  )
          v.                      )          1:22CV679
                                  )
KILOLO KIJAKAZI,                  )
Acting Commissioner of Social     )
Security,                         )
                                  )
                    Defendant.    )

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Plaintiff, John G., brought this action pursuant to the Social Security Act (the "Act") to obtain judicial review of a final decision of Defendant, the Acting Commissioner of Social Security, denying Plaintiff's claim for Supplemental Security Income ("SSI"). (Docket Entry 1.) Defendant has filed the certified administrative record (Docket Entry 5 (cited herein as "Tr. __")), and both parties have submitted dispositive briefs in accordance with Rule 5 of the Supplemental Rules for Social Security Actions under 42 U.S.C. § 405(g) (Docket Entry 9 (Plaintiff's Brief); Docket Entry 10 (Defendant's Brief); Docket Entry 12 (Plaintiff's Reply). For the reasons that follow, the Court should enter judgment for Defendant.

# I. PROCEDURAL HISTORY

Plaintiff applied for SSI on April 23, 2020 (Tr. 240-46), alleging disability since September 1, 2019 (see Tr. 240).[1] Upon denial of that application initially (Tr. 107-18, 138-41) and on reconsideration (Tr. 119-37, 145-49), he requested a hearing de novo before an Administrative Law Judge ("ALJ") (Tr. 152-55). Plaintiff, his attorney, and a vocational expert ("VE") attended the hearing. (Tr. 45-106.) The ALJ subsequently ruled that Plaintiff did not qualify as disabled under the Act. (Tr. 10-26.) The Appeals Council thereafter denied Plaintiff's request for review (Tr. 1-9, 237-39, 337-40), thereby making the ALJ's ruling the Commissioner's final decision for purposes of judicial review.

In rendering that disability determination, the ALJ made the following findings later adopted by the Commissioner:

> 1. [Plaintiff] has not engaged in substantial gainful activity since April 23, 2020, the application date.
>
> 2. [Plaintiff] has the following severe impairments: rheumatoid arthritis (RA), obesity, bipolar disorder, posttraumatic stress disorder (PTSD), and substance abuse disorder.
>
> . . .
>
> 3. [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals

---

[1] Notwithstanding Plaintiff's alleged onset date of September 1, 2019, Plaintiff lacked eligibility for SSI benefits until his application date of April 23, 2020 (see Tr. 240). See 20 C.F.R. § 416.202 (explaining that a claimant remains ineligible for SSI benefits until date he or she files SSI application); 20 C.F.R. § 416.501 (stating that a claimant may not receive SSI benefits for any period that predates first month he or she satisfies eligibility requirements, which cannot precede application date).

the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

. . .

4. . . . [Plaintiff] has the residual functional capacity to perform a range of light work . . . . [Plaintiff] can lift, carry, push, pull 20 pounds occasionally and 10 pounds frequently. He can sit six hours in an eight-hour workday and stand/walk six hours in an eight-hour day. He is limited to understanding, remembering, and carrying out simple instructions, which is defined to mean activity that is consistent with a [R]easoning [Development L]evel [("RDL")] of "two," as defined in the [Dictionary of Occupational Titles (DOT)]; and can sustain concentration, attention, and pace well enough to carry out those simple instructions for two-hour intervals over the course of an eight-hour workday. He is limited to working in proximity to, but not coordination with, co-workers and supervisors, but would still be able to interact with others sufficiently to complete a 30-day training period. He is further limited to working in a low-stress setting, which is specifically defined to mean: no paced production, such as on an assembly line where the worker does not control the pace of production; only simple work related decisions; few or no changes in the work setting; no dealing with crisis situations as an essential function of the job; and only superficial contact with the public, where "superficial" is defined to mean the contact is incidental and not an essential function of the job.

. . .

5. [Plaintiff] is unable to perform any past relevant work.

. . .

9. Considering [Plaintiff]'s age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [he] can perform.

. . .

3

> 10. [Plaintiff] has not been under a disability, as
> defined in the . . . Act, since April 23, 2020, the date
> the application was filed.

(Tr. 15-25 (bold font and internal parenthetical citations omitted).)

## II. DISCUSSION

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope of [the Court's] review of [such a] decision . . . is extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). Plaintiff has not established entitlement to relief under the extremely limited review standard.

### A. Standard of Review

"[C]ourts are not to try [a Social Security] case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, the Court "must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct legal standard." Hines, 453 F.3d at 561 (internal brackets and quotation marks omitted). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro

4

<u>v. Apfel</u>, 270 F.3d 171, 176 (4th Cir. 2001) (brackets and internal quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." <u>Hunter</u>, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the [C]ourt should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ, as adopted by the Commissioner]." <u>Mastro</u>, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the ALJ)." <u>Id.</u> at 179 (internal quotation marks omitted). "The issue before [the Court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." <u>Craig v. Chater</u>, 76 F.3d 585, 589 (4th Cir. 1996).

When confronting that issue, the Court must take note that "[a] claimant for disability benefits bears the burden of proving a disability," <u>Hall v. Harris</u>, 658 F.2d 260, 264 (4th Cir. 1981), and that, in this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be

expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months,'" id. (quoting 42 U.S.C. § 423(d)(1)(A)).[2] "To regularize the adjudicative process, the Social Security Administration [('SSA')] has . . . detailed regulations incorporating longstanding medical-vocational evaluation policies that take into account a claimant's age, education, and work experience in addition to [the claimant's] medical condition." Id. "These regulations establish a 'sequential evaluation process' to determine whether a claimant is disabled." Id.

This sequential evaluation process ("SEP") has up to five steps: "The claimant (1) must not be engaged in 'substantial gainful activity,' i.e., currently working; and (2) must have a 'severe' impairment that (3) meets or exceeds the 'listings' of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity [('RFC')] to (4) perform [the claimant's] past work or (5) any other work." Albright v. Commissioner of the Soc. Sec. Admin., 174 F.3d 473, 475 n.2 (4th Cir. 1999).[3] A finding adverse to the

_____

[2] The Act "comprises two disability benefits programs. The Disability Insurance Benefits Program provides benefits to disabled persons who have contributed to the program while employed. [SSI] provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

[3] "Through the fourth step, the burden of production and proof is on the claimant. If the claimant reaches step five, the burden shifts to the
(continued...)

6

claimant at any of several points in the SEP forecloses an award and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first three steps, "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's residual functional capacity ('RFC')." Id. at 179.[4] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can perform past relevant work; if so, the claimant does not qualify as disabled. See id. at 179-80. However, if the claimant establishes an inability to

---

[3] (...continued)
[Commissioner] . . . ." Hunter, 993 F.2d at 35 (internal citations omitted).

[4] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (*e.g.*, pain)." Hines, 453 F.3d at 562-63.

7

return to prior work, the analysis proceeds to the fifth step, whereupon the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Commissioner cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.[5]

## B. Assignments of Error

Plaintiff asserts that the Court should overturn the ALJ's finding of no disability on these grounds:

1) "[t]he ALJ failed to discuss [Plaintiff]'s ability to perform sustained interaction with coworkers and supervisors on a regular and continuing basis, as required by [Social Security Ruling 96-8p, Policy Interpretation Ruling Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims, 1996 WL 374184 (July 2, 1996) ("SSR 96-8p")]" (Docket Entry 9 at 4 (bold font and single-spacing omitted); see also Docket Entry 12 at 2-6);

---

[5] A claimant thus can establish disability via two paths through the SEP. The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five. Some short-hand judicial characterizations of the SEP appear to gloss over the fact that an adverse finding against a claimant on step three does not terminate the analysis. See, e.g., Hunter, 993 F.2d at 35 ("If the ALJ finds that a claimant has not satisfied any step of the process, review does not proceed to the next step.").

2) "the ALJ discounted [Plaintiff]'s testimony regarding the symptoms of his impairments, in part, because of inconsistent statements he made about his abuse of cough syrup[,] . . . and assessed [Plaintiff]'s general credibility and overall character for truthfulness, which is prohibited by [Social Security Ruling 16-3p, <u>Titles II and XVI: Evaluation of Symptoms in Disability Claims</u>, 2017 WL 5180304 (Oct. 25, 2017) ("SSR 16-3p")]" (Docket Entry 9 at 6 (bold font and single-spacing omitted); <u>see also</u> Docket Entry 12 at 6-12); and

3) "[t]he ALJ discounted [Plaintiff]'s testimony regarding the severity of his mental impairments, in part, by finding that [his] mental impairments generally improved with medication adjustments[b]ut that finding is not supported by the mental health treatment notes," and "discounted [Plaintiff]'s testimony without considering the consistency of that testimony with other evidence, such as statements [Plaintiff] made to his treating psychiatrist" (Docket Entry 9 at 9 (bold font and single-spacing omitted); <u>see also</u> Docket Entry 12 at 12-16).

Defendant contends otherwise and seeks affirmance of the ALJ's decision. (Docket Entry 10 at 15.)

### 1. Interaction with Coworkers and Supervisors

Plaintiff's first assignment of error argues that "[t]he ALJ failed to discuss [Plaintiff]'s ability to perform sustained interaction with coworkers and supervisors on a regular and

9

continuing basis, as required by SSR 96-8p." (Docket Entry 9 at 4 (bold font and single-spacing omitted); see also Docket Entry 12 at 2-6.) In particular, Plaintiff contends that the ALJ's finding in the RFC that Plaintiff "'is limited to working in proximity to, but not coordination with, co-workers and supervisors, but would still be able to interact with others sufficiently to complete a 30-day training period'" (Docket Entry 9 at 5 (quoting Tr. 20) (bold font omitted)) fails to "comply with . . . SSR 96-8p because it discusses [Plaintiff's mental] ability [to interact with co-workers and supervisors] only in terms of sufficiency to complete a 30-day training period" (id.). According to Plaintiff, "[t]he ALJ failed to discuss Plaintiff's ability to perform sustained interaction with coworkers and supervisors in an ordinary work setting on a regular and continuing basis for 8 hours a day, 5 days a week, as required by SSR 96-8p." (Id. at 5-6.) Those contentions lack merit.

Plaintiff's argument fails for the reasons succinctly put by the Commissioner:

> A plain reading of the RFC shows that the ALJ concluded that Plaintiff was limited to working in proximity to, but not in coordination with, co-workers and supervisors, on a regular and continuing basis for eight hours a day, five days a week, as required by SSR 96-8p (Tr. 20). The ALJ included the caveat that despite these limitations, Plaintiff would still be able to interact with others sufficiently to complete a 30-day training period, but this clause does not limit Plaintiff's social limitations to the 30-day training period.

. . .

10

> The [VE] testified that Plaintiff could perform the
> proffered jobs in response to the ALJ's hypothetical
> [question which included] the [social] limitations [in
> question] (Tr. 93-96).  <u>Plaintiff's counsel did not
> question the [VE] regarding whether Plaintiff's social
> limitations only applied to the 30-day training period,
> nor did Plaintiff object to the testimony</u>.  Accordingly,
> the ALJ was entitled to rely on the [VE]'s testimony, and
> it provides substantial evidence in support of the ALJ's
> step five finding.

(Docket Entry 10 at 6-7 (emphasis added).)

In reply, Plaintiff argues that the Commissioner "add[ed] words into the ALJ's RFC finding that the ALJ did not include," because "the ALJ did not use the words 'on a regular and continuing basis for eight hours a day, five days a week,' or any other words to that effect."  (Docket Entry 12 at 3.)  In Plaintiff's view, "[t]he only words used by the ALJ to define how long [Plaintiff] is able to engage in the relevant activities are 'sufficiently to complete a 30-day training period.'"  (<u>Id.</u> at 3-4 (quoting Tr. 20).)

Plaintiff's contention glosses over the fact that the ALJ need not have affixed "the words 'on a regular and continuing basis for eight hours a day, five days a week,' or any other words to that effect" (<u>id.</u> at 3) to each and every limitation the ALJ included in the RFC.  As the United States Court of Appeals for the Fourth Circuit has long recognized, SSR 96-8p expressly tasked the ALJ with assessing Plaintiff's "ability to do <u>sustained</u> work-related physical and mental activities in a work setting <u>on a regular and continuing basis</u> . . . [which] means <u>8 hours a day, for 5 days a</u>

11

week, or an equivalent work schedule." Hines, 453 F.3d at 562
(underscoring added) (italics and internal quotation marks
omitted); see also 20 C.F.R. § 416.945© ("When we assess your
mental abilities, we first assess the nature and extent of your
mental limitations and restrictions and then determine your [RFC]
for work activity on a regular and continuing basis." (emphasis
added)).

Given that regulatory framework, the ALJ's finding that
Plaintiff remained able "to work[] in proximity to, but not in
coordination with, co-workers and supervisors" (Tr. 20) necessarily
constituted a finding Plaintiff could do so on a regular and
continuing basis. See Shaw v. Kijakazi, No. 1:20CV581, 2021 WL
3079905, at *6 (M.D.N.C. July 21, 2021) (unpublished) ("[The
p]laintiff [] contends that the ALJ did not relate the state agency
psychological consultants' opinions that [the p]laintiff did not
handle stress well, that his ability to handle changes varied, and
that he required a stable, low stress work assignment[,] to the
ability to perform functions through a full workday. . . .
Significantly, both consultants found that [the p]laintiff retained
the mental RFC to perform [simple, routine, and repetitive tasks
('SRRTs')], which necessarily constitutes a finding that he can
perform them throughout an eight-hour day." (internal quotation
marks, some brackets, and internal parenthetical citations
omitted)), recommendation adopted, 2021 WL 6202788 (M.D.N.C. Aug.

12

23, 2021) (unpublished) (Osteen, J.); <u>Arnold v. Berryhill</u>, No. 1:17CV488, 2018 WL 3849913, at *5 (M.D.N.C. Aug. 13, 2018) (unpublished) ("[The p]laintiff [] contends that the ALJ's statement that the record shows [the p]laintiff was able to maintain concentration and attention to perform SRRTs raises the question whether the ALJ meant that [the p]laintiff is able to maintain concentration and attention to perform SRRTs all of the time, or only some of the time. That contention lacks merit. Following the step three finding, the ALJ included a limitation to SRRTs in [the p]laintiff's RFC, which reflects [the p]laintiff's 'ability to do sustained work-related physical and mental activities in a work setting <u>on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule</u>.' <u>Hines</u>, 453 F.3d at 562 (underlining added)." (internal quotation marks, some brackets, and internal parenthetical citations omitted)), <u>recommendation adopted</u>, 2018 WL 4471727 (M.D.N.C. Sept. 18, 2018) (unpublished) (Biggs, J.).

In light of the foregoing analysis, Plaintiff's first assignment of error falls short.

### 2. Evaluation of Inconsistent Statements

Plaintiff's second issue on review maintains that "the ALJ discounted [Plaintiff]'s testimony regarding the symptoms of his impairments, in part, because of inconsistent statements he made about his abuse of cough syrup[,] . . . and assessed [Plaintiff]'s

13

general credibility and overall character for truthfulness, which is prohibited by [SSR 16-3p]." (Docket Entry 9 at 6 (bold font and single-spacing omitted); see also Docket Entry 12 at 6-12.) More specifically, Plaintiff contends that SSR 16-3p "'eliminat[ed] the use of the term "credibility" from [the SSA's] sub-regulatory policy,'" and "'clarif[ied that subjective symptom evaluation is not an examination of an individual's character.'" (Docket Entry 9 at 6 (quoting SSR 16-3p, 2017 WL 5180304, at *2); see also id. at 7 ("'In evaluating an individual's symptoms, [ALJs] will not assess an individual's overall character or truthfulness in the manner typically used during an adversarial court litigation. The focus of the evaluation of an individual's symptoms should not be to determine whether he or she is a truthful person. Rather, [ALJs] will focus on . . . whether the intensity and persistence of the symptoms limit the individual's ability to perform work-related activities.'" (quoting SSR 16-3p, 2017 WL 5180304, at *11)).) Plaintiff notes that the ALJ found that Plaintiff's "'testimony regarding his use of dextromethorphan was not consistent with contemporaneous treatment records and suggest[ed] that other aspects of his testimony was [sic] similarly unreliable'" (id. at 8 (quoting Tr. 23)), and contends that, in doing so, the ALJ 1) "did not limit her evaluation to [Plaintiff]'s statements about his symptoms and the evidence in the record that [wa]s relevant to his [] impairments" (id. at 8), and 2) "assessed

14

[his] credibility and overall character or truthfulness in the manner typically used during an adversarial court litigation" (id. at 8-9). For the following reasons, Plaintiff's arguments miss the mark.

SSR 16-3p, consistent with the Commissioner's regulations, adopts a two-part test for evaluating a claimant's statements about symptoms. See SSR 16-3p, 2017 WL 5180304, at *3; see also 20 C.F.R. § 416.929. First, the ALJ "must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain." SSR 16-3p, 2017 WL 5180304, at *3. A claimant must provide "objective medical evidence from an acceptable medical source to establish the existence of a medically determinable impairment that could reasonably be expected to produce [the] alleged symptoms." Id. Objective medical evidence consists of medical signs ("anatomical, physiological, or psychological abnormalities established by medically acceptable clinical diagnostic techniques") and laboratory findings "shown by the use of medically acceptable laboratory diagnostic techniques." Id.

Upon satisfaction of part one by the claimant, the analysis proceeds to part two, which requires an assessment of the intensity and persistence of the claimant's symptoms, as well as the extent to which those symptoms affect his or her ability to work. See id.

at *4.  In making that determination, the ALJ must "examine the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record."  Id.  Where relevant, the ALJ will also consider the following factors in assessing the extent of the claimant's symptoms at part two:

> 1. Daily activities;
>
> 2. The location, duration, frequency, and intensity of pain or other symptoms;
>
> 3. Factors that precipitate and aggravate the symptoms;
>
> 4. The type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms;
>
> 5. Treatment, other than medication, an individual receives or has received for relief of pain or other symptoms;
>
> 6. Any measures other than treatment an individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and
>
> 7. Any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.

Id. at *7-8.  The ALJ cannot "disregard an individual's statements about the intensity, persistence, and limiting effects of symptoms solely because the objective medical evidence does not substantiate

16

the degree of impairment-related symptoms alleged by the individual." Id. at *5 (emphasis added).

In this case, the ALJ found, at part one of the subjective symptom analysis, that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," but then determined, at part two, that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [his] symptoms [we]re not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in th[e ALJ's] decision." (Tr. 22.) With regard to Plaintiff's mental impairments, the ALJ further supported that finding with the following analysis:

> As for [Plaintiff]'s statements about the intensity, persistence, and limiting effects of his symptoms, they are inconsistent with the overall evidence . . . .
>
> Mental health therapy notes show diagnoses for multiple mental conditions . . . . Some treatment was initiated as a condition o[f] probation or parole. [Plaintiff] takes medications for his mental health problems and notes indicate improvement in his mood, irritability, and ability to control his anger with medication since starting treatment with the Behavioral Health Center in 2019. Generally, [mental status examinations] were [within normal limits] except for abnormal mood/affect. His mental status appears linked in part to his physical issues and conflicts with his family. [Plaintiff] reported he could not get along with supervisors or coworkers, but therapy notes show he lost his last job due to theft. The record shows [Plaintiff] has a remote history of alcohol abuse but a more recent history of dextromethorphan abuse. The [ALJ] notes that while [Plaintiff] testified he had not used dextromethorphan since November or December 2020, treatment notes show he abused the substance as recently as August of 2021. Although [Plaintiff] suggested that the very recent

17

references to dextromethorphan use were referring to his use in December 2020, treatment notes from July and August 2021 reference more recent use and refer to his having "not used cough syrup for the past two days" and that he was at the "contemplative stage of dextromethorphan use[."] Thus, his testimony regarding his use of dextromethorphan was not consistent with contemporaneous treatment records and suggests other aspects of his testimony was [sic] similarly unreliable. The [ALJ] also notes that [Plaintiff] has been advised to contact Vocational Rehabilitation and, as of the date of the hearing, testified that he had not yet done so due to COVID but planned to contact them after the hearing.

As discussed in detail above, the record as a whole establishes [Plaintiff] has mental limitations but not as limiting as alleged. The [ALJ] finds that [Plaintiff] is limited to understanding, remembering, and carrying out simple instructions, which is defined to mean activity that is consistent with [RDL 2], as defined in the [DOT], in that the evidence supports a finding he could apply commonsense understanding to carry out detailed but uninvolved written or oral instructions and could deal with problems involving a few concrete variables in or from standardized situations, and that when he is so limited, he could sustain such activity for two-hour intervals over the course of an eight-hour workday on an ongoing basis. [Plaintiff] certainly has some anger issues, but anger does not seem to have been as big a problem at work as it has been at home and with family. Thus, the [ALJ] finds [Plaintiff]'s interpersonal issues are adequately accounted for by limiting him to working in proximity to, but not coordination with, co-workers and supervisors, but they are not so severe as to preclude him from interacting with others sufficiently to complete a 30-day training period. [Plaintiff]'s mental impairments also warrant limiting him to low stress work, as defined [in the RFC], which includes a limitation to only superficial contact with the public. It is notable that [Plaintiff] acknowledged he had lost his last job at Dollar Tree, not due to interpersonal conflict, but due to his having stolen cough medicine.

Although [Plaintiff] has suggested he would be able to tolerate less than even occasional interaction with co-workers and supervisors and would fail to follow directions during a workday, the record evidence, as

18

discussed above, does not support such extensive and additional limitations.

(Tr. 22-23 (emphasis added) (internal parenthetical citations omitted).) For the reasons more fully explained below, neither of Plaintiff's challenges to that analysis carry the day.

First, Plaintiff argues that, "[r]egarding statements by a claimant that must be considered when evaluating symptoms, the only such statements addressed by SSR 16-3p are 'an individual's statements about the intensity, persistence, and limiting effects of symptoms,' which must be evaluated by determining 'whether the statements are consistent with objective medical evidence and other evidence.'" (Docket Entry 9 at 7 (quoting SSR 16-3p, 2017 WL 5180304, at *6).) In Plaintiff's view, "[t]he ALJ did not limit her evaluation to [Plaintiff]'s statements about his symptoms and the evidence in the record that is relevant to his [] impairments, as required by SSR 16-3p[, and i]nstead[ ]evaluated [Plaintiff]'s statements regarding use of cough syrup, which SSR 16-3p prohibits because such statements are not about [Plaintiff]'s symptoms." (Id. at 8.)

Contrary to Plaintiff's assertions (see Docket Entry 9 at 7-8), in analyzing Plaintiff's subjective symptom reporting, the ALJ did not consider information that SSR 16-3p prohibits. Plaintiff's argument overlooks the fact that the ALJ found that Plaintiff suffered from a severe substance abuse disorder at step two of the SEP (see Tr. 16) and thus Plaintiff's statements regarding his use

19

of dextromethorphan or cough syrup hold relevance to the determination of the intensity, persistence, and limiting effects of Plaintiff's substance abuse disorder, see Cole v. Saul, No. 1:19CV1161, 2021 WL 1109399, at *6 (M.D.N.C. Mar. 23, 2021) (unpublished) (deeming ALJ's "discussion of the inconsistencies between the record and [the p]laintiff's testimony regarding her drug use" proper under SSR 16-3p as "relevant to [the p]laintiff's substance abuse impairments" (some brackets omitted)), recommendation adopted, 2021 WL 3196438 (M.D.N.C. May 24, 2021) (unpublished) (Tilley, S.J.); Marlin D. v. Saul, No. 2:18CV360, 2020 WL 1518628, at *3, 20 (E.D. Wash. Mar. 30, 2020) (unpublished) (holding, in case where ALJ found the plaintiff's substance use disorder a severe impairment, and "discounted [the p]laintiff's symptom claims because he made inconsistent statements regarding his alcohol use," that "[c]onflicting and inconsistent statements about substance use are appropriate grounds for the ALJ to discount a claimant's reported symptoms" under SSR 16-3p (internal citation omitted)); see also Walsh v. Commissioner of Soc. Sec. Admin., No. CV-15-2466, 2017 WL 1130366, at *1, 10 (D. Ariz. Mar. 27, 2017) (unpublished) (where ALJ did not find the plaintiff suffered from substance abuse disorder and "acknowledged that [the plaintiff]'s past substance abuse itself had no bearing on the disability determination, but found that [her] inconsistent statements [concerning her use of marijuana and alcohol] further

20

diminish[ed the plaintiff's] credibility," the court found "[t]h[at] type of general impeachment [] not permissible under S.S.R. 16-3p" (emphasis added) (internal quotation marks and citation omitted)); but see Farnan v. Commissioner of Soc. Sec., No. 6:18CV6832, 2020 WL 620065, at *2 (W.D.N.Y. Feb. 10, 2020) (unpublished) (finding ALJ's reliance on the plaintiff's "inconsistent statements about her substance abuse history and sobriety . . . pertain[ed] to only one of [the plaintiff]'s severe impairments — substance addiction disorder" — and ha[d] no relevance to her other severe impairments" and thus that, "in concluding that, overall, [the plaintiff's] statements about the intensity, persistence and limiting effects of all her symptoms [we]re lacking in consistency and persuasiveness, the ALJ appear[ed] to have assessed [the plaintiff's] overall character or truthfulness instead of comparing [her] claimed symptoms with the medical evidence" (internal quotation marks and italics omitted)).[6]

---

[6] Some cases hold that, even in the absence of a finding by the ALJ of a severe substance abuse disorder at step two of the SEP, the ALJ did not contravene SSR 16-3p by discounting the plaintiff's subjective symptom reporting due to inconsistent statements regarding substance abuse. See, e.g. Luthy v. Saul, No. 17CV2206, 2020 WL 6938300, at *6 n.4, *7 (D. Colo. Nov. 25, 2020) (unpublished) (finding, in case where SSR 16-3p applied, no merit to the plaintiff's argument "that the ALJ improperly discounted [the] plaintiff's testimony about his symptoms and limitations based on inconsistency in statements about substance use . . . that were not tied to a medical impairment," noting "that is not the standard; the ALJ is to evaluate a claimant's statements by considering any inconsistencies in the evidence and the extent to which th[ere] are any conflicts between a claimant's statements and the rest of the evidence," as well as that "decision to discount [the] plaintiff's testimony on . . . substance use, because it was contradicted by other evidence in the record, was supported by substantial evidence" (citing 20 C.F.R. § 404.1529(c)(4)) (internal quotation marks and citation omitted)).

Second, Plaintiff maintains that, in finding that Plaintiff's "'testimony regarding his use of dextromethorphan was not consistent with contemporaneous treatment records and suggests other aspects of his testimony was [sic] similarly reliable'" (Docket Entry 9 at 8 (quoting Tr. 23)), "[t]he ALJ assessed [Plaintiff]'s credibility and overall character or truthfulness in the manner typically used during an adversarial court litigation, which is explicitly prohibited by SSR 16-3p" (id. at 8-9). In response, the Commissioner contends that "the ALJ did not discount Plaintiff's testimony based upon his character[; r]ather, the ALJ correctly noted that Plaintiff made inconsistent statements regarding his dextromethorphan use, which undermined his testimony on the matter." (Docket Entry 10 at 14 (citing Tr. 23) (emphasis added).)[7] Plaintiff counters that the Commissioner's "allegation on this issue is refuted by the ALJ's own statement," in that "[t]he ALJ explicitly stated that the inconsistency of [Plaintiff]'s testimony about his dextromethorphan use **'suggests other aspects of his testimony was (sic) similarly unreliable**[,]'"

_____

[7] The Commissioner also argues that, "[although SSR 16-3p removed the word 'credibility' from [SSA] policy, the Ruling did not substantively change the way ALJs evaluate a claimant's testimony." (Docket Entry 10 at 14.) This Court (per United States District Judge Catherine C. Eagles), however, has previously observed that "SSR 16-3p effect[ed] much more than a mere clarification of existing SSA policy," and "change[d] two decades of SSA policy (and ALJ practice) regarding the evaluation of the intensity, persistence, and limiting effects of a claimant's symptoms," and thus held that "SSR 16-3p change[d] (rather than clarifie[d]) existing SSA policy regarding subjective symptom evaluation . . . ." Bagliere v. Colvin, No. 1:16CV109, 2017 WL 318834, at *6-7 (M.D.N.C. Jan. 23, 2017) (unpublished), recommendation adopted, slip op. (M.D.N.C. Feb. 23, 2017) (Eagles, J.).

which "indicates that the ALJ used the inconsistency of [Plaintiff]'s statements about dextromethorphan use to generally discount other portions of his testimony that are unrelated to that use." (Docket Entry 12 at 9 (bolding added by Plaintiff).)

Courts across the country appear to disagree regarding the extent to which, under SSR 16-3p, ALJs can discount a claimant's subjective symptom reporting <u>generally</u> based on specific inconsistent statements in the record. <u>Compare</u> <u>Huigens v. Soc. Sec. Admin., Comm'r</u>, 718 F. App'x 841, 848 (11th Cir. 2017) ("[T]o the extent the ALJ stated in his decision that [the plaintiff]'s <u>credibility is questionable</u>, the ALJ's statement, viewed in context, was not an assessment of [the plaintiff]'s overall character for truthfulness and thus was consistent with . . . SSR 16-3p. The context shows that the ALJ's statement was merely an assessment of the <u>reliability of [the plaintiff]'s subjective report of the nature and extent of her symptoms</u> after weighing it in light of the treatment records, diagnostic findings, opinions of examining and non-examining physicians, and [the plaintiff's] level of daily activities. Thus, . . . the ALJ did not commit reversible error in conducting the subjective symptom evaluation." (emphasis added) (internal quotation marks and citation omitted)); <u>Wesley P. v. Commissioner of Soc. Sec.</u>, Civ. No. C20-699, 2021 WL 148390, at *4 (W.D. Wash. Jan. 15, 2021) (unpublished) ("The ALJ cited evidence showing that [the p]laintiff made inaccurate or

inconsistent statements regarding his substance use . . ., and found that these discrepancies undermined the reliability of [the p]laintiff's self-report. . . . [The p]laintiff [] argues that the ALJ erred in discounting his allegations based on inconsistencies in his reporting of alcohol or drug use, because this amounts to a general finding that he is not a truthful person, which is contrary to SSR 16-3p. The Court disagrees. The ALJ pointed to specific inconsistencies in [the p]laintiff's statements to providers, rather than, for example, inferring from the evidence of his drug use that he is not a truthful person. The ALJ did not err in citing [the p]laintiff's inaccurate reporting of his substance use as one reason to discount his allegations." (emphasis added) (internal citation omitted)), Smith v. Saul, No. 2:19CV496, 2021 WL 414583, at *8 (N.D. Ind. Jan. 14, 2021) (unpublished) (rejecting the plaintiff's "argument that the ALJ wrongly relied on evidence of drug-seeking behavior to discredit [the p]laintiff's subjective allegations," because "SSR 16-3p requires symptom evaluation to focus on the evidence rather than a claimant's character, and the ALJ [] violated the spirit of SSR 16-3p by relying on evidence of [the p]laintiff's drug-seeking behavior to imply he was untrustworthy and, therefore, his symptoms were not as severe as alleged," and noting that properly considered evidence included the plaintiff's "lying or presenting inconsistent information to medical professionals" (emphasis added) (internal quotation marks

24

and brackets omitted)), recommendation adopted, 2021 WL 411433
(N.D. Ind. Feb. 5, 2021) (unpublished), Walls v. Berryhill, No.
18CV464, 2019 WL 1388587, at *4-5 & n.6 (W.D. Okla. Mar. 26, 2019)
(unpublished) (ruling that, where ALJ found that "the claimant's
hearing testimony concerning his alcohol . . . usage [wa]s markedly
different from the information he gave consultative providers," and
that "th[o]se multiple discrepancies suggest[ed] strongly that the
claimant m[ight] be less than forthcoming, further diminishing his
credibility," "ALJ did not err in citing inconsistencies regarding
[the p]laintiff's alcohol consumption to diminish his credibility
under SSR 16-3p," and further observing that, "[although the ALJ
stated that [the p]laintiff's credibility was diminished and SSR
16-3p eliminated the use of the term credibility[,] the ALJ was
still charged with considering the consistency of [the p]laintiff's
statements with the evidence of record in evaluating [the
p]laintiff's subjective statements" (emphasis added) (footnote and
internal quotation marks omitted)), Jennifer C. v. Commissioner of
Soc. Sec., No. 2:17CV425, 2019 WL 1264875, at *2, 5 (E.D. Wash.
Mar. 19, 2019) (unpublished) ("[S]everal instances in the record
reflect the [plaintiff]'s misinformation to care providers,
misinformation that could taint the providers' conclusions. The
[plaintiff]'s denial of any drug use history is one of those
instances. . . . [The p]laintiff's inconsistencies regarding the
history of her substance abuse provide some support for the ALJ's

finding that [the p]laintiff's <u>testimony was not entirely reliable</u> <u>[and] underlined] her reported symptoms and their severity during</u> <u>the relevant period</u>." (emphasis added) (brackets omitted)), <u>and</u> <u>Daniel N. v. Commissioner of Soc. Sec.</u>, Civ. No. C17-5895, 2019 WL 366217, at *8 (W.D. Wash. Jan. 30, 2019) (unpublished) ("The ALJ reasonably determined that it [wa]s the combination of [] inconsistencies [in the plaintiff's statements regarding extreme symptoms such as hallucinations and hearing loss], and not any inconsistency in particular, that <u>undermine[d] the [plaintiff]'s</u> <u>reliability as an accurate historian</u>. The ALJ did not assess [the] plaintiff's overall character or truthfulness, as [the] plaintiff asserts. Rather, the ALJ properly discussed specific inconsistencies with the objective medical evidence and the other evidence in the record." (emphasis added) (internal quotation marks and citations omitted)), <u>with Stephen C. v. Commissioner of Soc.</u> <u>Sec.</u>, No. 2:19CV1897, 2020 WL 5747820, at *7 (W.D. Wash. Sept. 25, 2020) (unpublished) ("[The Commissioner] asserts that the ALJ's brief finding that [the] plaintiff had given conflicting information about his alcohol usage justifies the ALJ's rejection of [the] plaintiff's symptom testimony. However, the ALJ did not link this finding to a wholesale rejection of [the] plaintiff's testimony. Even if the ALJ had done so, . . . such would not justify finding that [the] plaintiff's testimony was <u>overall</u> <u>unreliable</u> [under SSR 16-3p]." (emphasis added)), <u>Farnan</u>, 2020 WL

26

620065, at *2 (finding that, "in concluding that, <u>overall</u>, [the plaintiff's] statements about the intensity, persistence and limiting effects of all her symptoms [we]re <u>lacking in consistency and persuasiveness</u>" based on "inconsistent statements about her substance abuse history and sobriety," ALJ "appear[ed] to have assessed [the plaintiff's] overall character or truthfulness instead of comparing [her] claimed symptoms with the medical evidence" (emphasis added) (internal quotation marks and italics omitted)), <u>Robert T. v. Berryhill</u>, No. 17CV2203, 2018 WL 6521504, at *2-3 (C.D. Ill. Nov. 2, 2018) (unpublished) ("[T]he ALJ erroneously considered [the p]laintiff's perceived truthfulness when concluding that [his] testimony that he was unable to sustain full-time work activities was not supported by the record. The ALJ cited to significant inconsistencies in [the p]laintiff's testimony [about his illiteracy] that <u>reflect[ed] poorly on his statements and their reliability</u>. . . . While it would be reasonable for the ALJ to consider [the p]laintiff's ability to read and write in determining which jobs he can perform, the ALJ instead considered [the p]laintiff's inconsistent statements to find that [his] testimony was <u>unreliable</u>. In other words, the ALJ assessed the credibility of [the p]laintiff's statements, which SSR 16-3p specifically prohibits." (emphasis added) (internal quotation marks, some brackets, and parenthetical citations omitted)), <u>and Corral v. Berryhill</u>, Civ. No. 16 C 4315, 2017 WL 3070722, at *5

(N.D. Ill. July 19, 2017) (unpublished) ("[The] ALJ [] found that [the claimant]'s allegations are not fully credible in part because he has made inconsistent statements . . . [and] applied for state unemployment benefits after the alleged onset date, . . . which brings into question the reliability of the claimant's allegations generally[.]  In so finding[,] the ALJ engaged in precisely the type of character-based credibility determination that the SSA cautioned against in its recent guidance contained in SSR 16-3p[.]" (emphasis added) (internal quotation marks, some brackets, citations, and some ellipses omitted)).

On balance, and given the specific circumstances of this case, the Court should follow the reasoning of the above-cited cases finding that the ALJ did not violate SSR 16-3p by engaging in a wholesale assessment of the plaintiff's overall character or truthfulness.  Here, the ALJ clearly did not find that Plaintiff lacked honesty or trustworthiness in general, as the ALJ credited some of Plaintiff's testimony (see Tr. 22 (deeming Plaintiff's "statements concerning the intensity, persistence and limiting effects of [his] symptoms [] not entirely consistent with the medical evidence and other evidence in the record" (emphasis added))), and included multiple, significant limitations in the RFC to account for Plaintiff's reported mental symptoms (see Tr. 20). Also notable, the ALJ did not find that all of Plaintiff's subjective statements throughout the administrative proceedings

28

lacked reliability because of his inconsistent hearing testimony regarding his dextromethorphan use; rather, the ALJ specifically focused on a direct inconsistency between Plaintiff's testimony and very recent treatment records and indicated that those clear-cut contradictions raised the possibility that Plaintiff's hearing testimony lacked reliability. (See Tr. 23.) Moreover, the ALJ made no finding that Plaintiff's mere use of dextromethorphan (as opposed to his inconsistent statements about such use) rendered his hearing testimony unreliable. See Wesley P., 2021 WL 148390, at *4 (determining that ALJ did not violate SSR 16-3p, because ALJ "pointed to specific inconsistencies in [the p]laintiff's statements to providers, rather than, for example, inferring from the evidence of his drug use that he is not a truthful person").

Moreover, even if the ALJ's remark violated SSR 16-3p, that error qualifies as harmless under the circumstances of this case. See generally Fisher v. Bowen, 869 F.2d 1055, 1057 (7th Cir. 1989) (observing that "[n]o principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result"). The ALJ here provided other bases for discounting Plaintiff's subjective symptom reports which did not depend on the reliability of Plaintiff's hearing testimony. In that regard, the ALJ noted that Plaintiff underwent some of his mental health treatment "as a condition o[f] probation or parole"

29

(Tr. 22 (citing Tr. 1224)), that mental health treatment "notes indicate[d] improvement in [Plaintiff's] mood, irritability, and ability to control his anger with medication since starting treatment with the Behavioral Health Center in 2019" (id. (citing Tr. 670-744, 1191-1218, 1422-72)), that "[mental status examinations] were [within normal limits] except for abnormal mood/affect" (id.), that "[h]is mental status appear[ed] linked in part to his physical issues and conflicts with his family" (id. (citing Tr. 733, 1205)), and that "therapy notes showed Plaintiff] lost his last job due to theft" (Tr. 22-23).[8]

_____

[8] In Plaintiff's Reply, he argues that "SSR 16-3p does not . . . state that the reason a claimant stopped working a particular job is a valid factor for an ALJ to consider when evaluating the intensity, persistence, and limiting effects of the claimant's symptoms" (Docket Entry 12 at 14), and suggests that SSR 16-3p's elimination of credibility assessments also precluded ALJs from considering a claimant's prior work record (id. at 15). That argument entirely ignores SSR 16-3p's instruction that, where an ALJ "cannot make a disability determination or decision that is fully favorable based solely on objective medical evidence," the ALJ must "carefully consider other evidence in the record in reaching a conclusion about the intensity, persistence, and limiting effects of a[ claimant]'s symptoms[, which] . . . includes statements from . . . medical sources . . . that might have information about the claimant's symptoms," SSR 16-3p, 2017 WL 5180304, at *6. In turn, SSR 16-3p notes that "[medical sources may offer diagnoses, prognoses, and opinions as well as statements and medical reports about a[ claimant]'s history, treatment, responses to treatment, prior work record, efforts to work, daily activities, and other information concerning the intensity, persistence, and limiting effects of a[ claimant]'s symptoms." (Id.) Many courts have recognized that, under SSR 16-3p, ALJs may continue to consider a claimant's prior work record in evaluating his or her subjective symptom reporting. See, e.g., Daniel S. v. Saul, No. 1:19CV3010, 2020 WL 1915894, at *6 (E.D. Wash. Feb. 24, 2020) (unpublished) ("When considering a claimant's contention that he cannot work because of his impairments, it is appropriate [under SSR 16-3p] to consider whether the claimant has not worked for reasons unrelated to his alleged disability."); Landers v. Berryhill, No. 4:17CV2830, 2019 WL 1294811, at *4 (E.D. Mo. Mar. 21, 2019) (unpublished) (stating that, under SSR 16-3p, the ALJ "must consider . . . the claimant's work history"); T.R. v. Berryhill, No. 17CV5587, 2019 WL 1100266, at *12 (D. Minn. Mar. 8, 2019) (unpublished) (noting that SSR 16-3p "incorporates the regulation[] . . . 20 C.F.R. § 416.929(c)(3), which identif[ies] factors to be considered in evaluating the intensity, persistence and functionally-limiting effects of [] symptoms, including a claimant's . . . prior work record"); Cervantez v. Berryhill, No. 17CV307, 2018 WL 6075790, at *2 (C.D. Cal. Nov. 21, (continued...)

30

As the ALJ's remark that Plaintiff's inconsistent statements about his cough syrup abuse suggested that some aspects of his hearing testimony lacked reliability did not impact <u>any</u> of the ALJ's above-described, valid bases for discounting Plaintiff's subjective symptom reporting, no basis for remand exists. <u>See</u> <u>Rames v. Kijakazi</u>, No. 21-35009, 2021 WL 5564752, at *1 (9th Cir. Nov. 29, 2021) (unpublished) ("The ALJ found that [the plaintiff] exaggerated her pain symptoms to obtain opiates, citing evidence that [her] primary care provider expressed concern about [the plaintiff's] frequent ER visits and drug seeking behavior. [The

---

[8] (...continued)
2018) (unpublished) ("Despite [the p]laintiff's claim to the contrary, . . . a claimant's poor work history remains a relevant factor in weighing testimony, even after the recent [SSR] 16-3p, which eliminated the term 'credibility' from the [SSA]'s sub-regulatory policy."); <u>Saltsman v. Berryhill</u>, No.: 5:17CV168, 2018 WL 4701790, at *10 (N.D. Fla. Sept. 29, 2018) (unpublished) ("[The p]laintiff deems [a] statement [from the ALJ that the plaintiff's work history discredited his complaints] an inappropriate examination of [the p]laintiff's character that runs afoul of SSR 16-3p. The court does not agree. Even assuming that an ALJ's failure to abide by the terms of SSR 16-3p in rendering an opinion would amount to reversible error, the court finds the ALJ's statement in this instance not to expressly raise a matter of credibility but rather to make the point that [the p]laintiff's work history was inconsistent with his position that he would work were it not for his disability.' (footnote omitted)); <u>Teri G. v. Commissioner of Soc. Sec.</u>, No. 2:17CV50, 2018 WL 4016310, at *4 n.3 (E.D. Wash. Aug. 22, 2018) (unpublished) ("[T]he ALJ's discussion of [the p]laintiff's work history falls within a reasonable interpretation of the consistency of [the p]laintiff's claims versus the other evidence in the record, even under [SSR] 16-3p."); <u>Alesia v. Berryhill</u>, No. 16CV9806, 2018 WL 3920534, at *8 (N.D. Ill. Aug. 16, 2018) (unpublished) ("Both SSR 16-3p and its predecessor, [Social Security Ruling 96-7p, <u>Policy Interpretation Ruling Titles II and XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements</u>, 1996 WL 374186 (July 2, 1996) ('SSR 96-7p')], refer to a claimant's 'prior work record' and 'efforts to work' as information relevant to evaluating a claimant's symptoms." (footnote omitted)); <u>Lee v. Berryhill</u>, No. 2:17CV3230, 2018 WL 1115986, at *5 (C.D. Cal. Feb. 27, 2018) (unpublished) ("The ALJ was entitled [under SSR 16-3p] to determine from [the p]laintiff's pre-disability work history (or lack thereof) that he lacked motivation to work."); <u>Smith v. Berryhill</u>, No. 2:16CV1247, 2017 WL 1502799, at *7 (D. Or. April 26, 2017) (unpublished) (citing SSR 16-3p for the proposition that "[a]n ALJ may consider a claimant's work record when evaluating the credibility of a claimant's symptom testimony").

31

plaintiff] argues that this finding was in error because [SSR 16-3p] prohibits general credibility findings. Even if this finding was in error, any error was harmless because the ALJ's discounting of [the plaintiff]'s symptom and pain testimony on other grounds is well-supported by substantial evidence in the record." (internal quotation marks, citation, and ellipses omitted)); <u>Danielle L. v. Saul</u>, No. 1:18CV3213, 2020 WL 3619081, at *7 (E.D. Wash. Mar. 11, 2020) (unpublished) ("The ALJ considered records indicating that [the p]laintiff falsified a urine sample . . ., then refused to give a urine sample, and was discharged from treatment shortly thereafter. The ALJ found the falsification of the urine sample is deceptive behavior toward [the plaintiff's] mental health providers which calls into question the credibility of her subjective report of symptoms to those providers. . . . While it could be reasonable [and in keeping with SSR 16-3p] to infer a lack of candor to her mental health providers based on this incident, in this case it may not be a convincing reason for giving less weight to [the p]laintiff's symptom claims. Nonetheless, the ALJ provided other clear and convincing reasons supported by substantial evidence and the error, if any, is harmless." (internal citation omitted)); <u>Jennifer C. v. Berryhill</u>, No. 2:17CV233, 2018 WL 2552161, at *3 (D. Me. June 4, 2018) (unpublished) ("In deeming the plaintiff's subjective allegations only partially credible because she was not entirely forthcoming at the hearing when asked about substance

32

abuse issues, the ALJ made precisely the type of assessment of a claimant's overall character or truthfulness prohibited by SSR 16-3p. Nevertheless, the ALJ offered additional reasons for her assessment of the plaintiff's subjective allegations. . . . [T]hose reasons pass muster pursuant to SSR 16-3p, notwithstanding the plaintiff's arguments to the contrary. The ALJ's analysis, accordingly, survives scrutiny pursuant to the applicable deferential standard of review." (internal quotation marks, citation, and brackets omitted)), recommendation adopted, 2018 WL 4558174 (D. Me. Sept. 21, 2018) (unpublished).

In sum, Plaintiff's second issue on review fails as a matter of law.

### 3. Medical Improvement and Consistency of Statements

In Plaintiff's third and final assignment of error, he contends that "[t]he ALJ discounted [Plaintiff]'s testimony regarding the severity of his mental impairments, in part, by finding that [his] mental impairments generally improved with medication adjustments[, b]ut that finding is not supported by the mental health treatment notes," while also "discount[ing Plaintiff]'s testimony without considering the consistency of that testimony with other evidence, such as statements [Plaintiff] made to his treating psychiatrist." (Docket Entry 9 at 9 (bold font and single-spacing omitted); see also Docket Entry 12 at 12-16.) In that regard, Plaintiff notes that, "[contrary to the ALJ's

33

findings, th[e] evidence from Cone Behavioral Health establishes
that[,] although some of [Plaintiff]'s mental impairment symptoms
improved with medication, other mental symptoms continued
unabated," as well as that "the symptom improvement that was shown
was not sustained, as the severity of those particular symptoms
waxed and waned from treatment session to treatment session."
(Docket Entry 9 at 16; see also id. at 9-16 (detailing evidence
Plaintiff believes demonstrates that he did not experience
sustained improvement in his mental symptoms (citing Tr. 675, 677,
681-83, 687-88, 693, 700, 705-07, 711-12, 725-26, 730, 732-33, 737,
740, 744, 1192, 1196, 1205, 1209, 1212, 1217, 1427-28, 1433, 1448,
1453)).) Plaintiff additionally faults the ALJ for "fail[ing] to
discuss the consistency of [Plaintiff's] statements [to his
treating psychiatrist regarding ongoing mental impairment symptoms
that continued despite treatment] with [Plaintiff]'s hearing
testimony" in violation of SSR 16-3p. (Id. at 17-18 (citing Tr.
18, 22).) Those arguments fail to carry the day.

As detailed in the discussion of Plaintiff's second assignment
of error, the ALJ found, as one of many reasons for discounting
Plaintiff's subjective symptom reporting, that "[Plaintiff] took]
medications for his mental health problems and notes indicate[d]
improvement in his mood, irritability, and ability to control his
anger with medication since starting treatment with the Behavioral
Health Center in 2019." (Tr. 22 (citing Tr. 670-744, 1191-1218,

34

1422-72).) Earlier in the ALJ's decision, the ALJ provided the following analysis of Plaintiff's mental health treatment:

> At the psychological consultative examination (PE) in July 2019, Sara Schneidmiller, Ph.D. determined [Plaintiff] had PTSD, bipolar II disorder, moderate alcohol use disorder in early remission, and moderate other hallucinogen use disorder. During the exam, [Plaintiff] was "extremely irritable" with "verbally explosive behaviors." This PE surmised [Plaintiff] could retain new information and follow simple instruction. He could perform simple, repetitive tasks. He would likely be unable to tolerate the stress of a daily work environment and would have difficulty following rule[s], cooperat[ing] with supervisors, or interact[ing] with peers. The PE recommended a representative payee to manage funds. <u>The [ALJ] finds this opinion mostly unpersuasive, as the extreme limitation on tolerating work stress is speculative and was provided shortly after [Plaintiff] stopped drinking heavily and during a period of time when the record does not show he was getting regular mental health treatment</u>. It is also inconsistent with [Plaintiff]'s presentations on examinations throughout the current [period at issue].
>
> . . .
>
> The records also show [Plaintiff] has multiple mental impairments and takes several medications for the conditions. At a therapy visit in September 2019, [Plaintiff]'s mental status showed an irritable mood/affect, and poor judgment, but otherwise normal exam. At physical exams in December 2019 and March 2020, he had normal psychiatric checkups. In April 2020, he reported he <u>did not feel as irritable as he used to</u>, though he felt "blah" and unmotivated. He had fair concentration, good appetite, no homicide or suicide ideation, and felt anxious/tense. His psychiatric evaluation showed a depressed mood with slightly restricted affect but otherwise normal mental status including good memory and concentration, and intact activities of daily living. <u>Notes also indicate his mood and irritability improved with an increase of lithium and clonidine</u>. In June 2020, he stated he wanted to get a job but was unsure how due to his criminal history. His mental status exam (MSE) showed an angry mood but otherwise was within normal limits (WNL). In

35

July 2020, he reported ongoing problems controlling his
anger. He had an angry mood but his MSE was otherwise
WNL. In August 2020, he reported he was working on his
procrastination problem. He reported he mowed the yard,
worked on the house, and washed dishes. He had a
restricted affect but otherwise normal MSE. The
therapist noted <u>overall improvement</u> and [Plaintiff] was
<u>more engaged</u> in the interview compared to the initial
visit. In October 2020, [Plaintiff] stated he forgot to
call regarding a [VR] referral. He reported poor sleep,
depression, fatigue, but fair attention/concentration.
He felt anxious and tense and experienced "occasional"
panic attacks. He had a depressed mood and irritable
affect, but otherwise normal MSE. His MSE in February
and March 2021 showed an irritable mood but was otherwise
normal. In March 2021, his psychiatric checkup was
normal. In April 2021, h[e] had an anxious/depressed/
irritable mood, constricted affect, impaired short-term
memory, and racing/obsessional thoughts but otherwise
normal MSE. Notes from May 2021 show [Plaintiff] abused
dextromethorphan a few times since the prior visit but
did not want to talk about it. He had been aggressive,
demanding, and staying in bed most of the time. On exam,
he had a depressed mood but otherwise normal MSE. In
July 2021, his MSE was generally WNL though he reported
a "rough" mood. He reported his recent physical problems
with the [methicillin-susceptible staphylococcus aureus
("MSSA")] increased his depression. In August 2021 his
MSE was WNL other than a depressed mood. The [ALJ] did
not evaluate every therapy visit in writing, but the
record as a whole shows [Plaintiff] generally had normal
MSE other than depressed/anxious/angry/irritable mood and
poor judgment. <u>As a whole, the record shows [Plaintiff]
improved with medication adjustments</u>. Recent exams were
mostly normal other than depressed mood.

(Tr. 16-18 (emphasis added) (internal parenthetical citations

omitted).) As elucidated by the following analysis of the mental

health evidence cited by the ALJ, her analysis sufficiently

captured the ebbs and flows of Plaintiff's mental symptoms and thus

the ALJ did not err in finding some overall improvement in

Plaintiff's mental symptoms.

36

Prior to beginning mental health treatment with Dr. Reina Hisada in September 2019 (and prior to Plaintiff's eligibility for SSI), a consultative examiner who evaluated Plaintiff on July 2, 2019, for a prior application for SSI found Plaintiff "irritable," "minimally cooperative," and "prone to verbal outbursts throughout the examination" (Tr. 612), and described his affect as "irritable bordering on explosive" (Tr. 614). At his first visit with Dr. Hisada in September 2019, she recorded Plaintiff's mother's reports that described Plaintiff as "out of control" with a "teenager mentality," and a "magnificent liar" who had faced homelessness and arrests for violence. (Tr. 671.) Dr. Hisada documented "notable irritability" and a "lack of remorse," and prescribed risperidone, citalopram, and clonidine. (See Tr. 675.) At a follow-up visit in October 2019, although Plaintiff denied significant change in his mental symptoms (see Tr. 677), Dr. Hisada found Plaintiff "more engaging" than the previous visit and increased the risperidone dose (Tr. 681 (emphasis added)).

In January 2020, Plaintiff reported to Dr. Hisada that he had abused dextromethorphan and engaged in a physical altercation with his mother on December 30, 2019, which led to his arrest and jail time. (See Tr. 682.) Although Dr. Hisada noted significant irritation and mood changes, she found Plaintiff "redirectable and very receptive to the treatment recommendation" and both increased his risperidone and added lithium (Tr. 687 (emphasis added)). In

37

February 2020, Plaintiff reported "good and bad days" (see Tr. 688 (internal quotation marks omitted)), his mother stated that Plaintiff had "d[one] better" on lithium (Tr. 689 (emphasis added)), and Dr. Hisada made no changes to Plaintiff's medications (see Tr. 693-94). Just prior to his eligibility for SSI in April 2020, Plaintiff described increased anxiety in the setting of the Covid pandemic and some anger outbursts with his mother, but also stated he "d[id] house chores regularly," "agree[d] that he ha[d] been doing better" and "stay[ing] up during the day, while he used to sleep during the day," as well as that he "sle[pt] better." (Tr. 700 (emphasis added).) Dr. Hisada noted that Plaintiff's affect appeared "[a]ppropriate" and "less irritable" (Tr. 704 (emphasis added)), found "overall improvement in mood dysregulation and irritability" (Tr. 705 (emphasis added)), and increased Plaintiff's lithium and clonidine (see id.).

At a follow-up visit in late April 2020, just after Plaintiff's eligibility date for SSI, he "state[d] that he believe[d] he ha[d] been calmer after up titration of clonidine" and "d[id] not feel irritable as much as he used to." (Tr. 706 (emphasis added).) Dr. Hisada described Plaintiff's affect as "[a]ppropriate, [c]ongruent [with his mood] and slightly restricted, calm," and found "steady improvement in mood dysregulation and irritability after uptitration of lithium and clonidine." (Tr. 711 (emphasis added).) In June 2020, although

38

Plaintiff reported no motivation or initiative, he indicated his willingness to pursue Vocational Rehabilitation ("VR"), and stated that he felt his criminal history would impede his ability to obtain employment. (See Tr. 726.) Dr. Hisada observed an angry mood and a restricted affect (see Tr. 729), and increased his lithium (see Tr. 730). By the next month, Dr. Hisada remarked that, "[although [Plaintiff] continue[d] to report irritability, there ha[d] been gradual improvement in his mood symptoms since up titration of lithium." (Tr. 737 (emphasis added).)

In August 2020, although Plaintiff complained of nightmares, flashbacks, fatigue, and irritability, he admitted that he had procrastinated and had not contacted either a therapist or VR as recommended (see Tr. 740), indicated that he mowed the yard and did house chores because his mother remained in bed all day due to illness (see id.), and described his mood as "fine" (Tr. 743). Dr. Hisada once again noted "overall improvement in irritability" and that Plaintiff appeared "more engaged in the interview compared to the initial visit" (Tr. 744 (emphasis added)). Two months later, Plaintiff advised Dr. Hisada that he had "forgot[ten]" to contact VR and, although Plaintiff felt some depression, fatigue, and irritability, he had not engaged in any aggressive behaviors. (Tr. 1192.) Dr. Hisada believed that Plaintiff's "fluctuation of symptoms [was] mostly secondary to characterological traits" and thus that he would "greatly benefit from [cognitive behavioral

39

therapy/dialectical behavioral therapy]" (Tr. 1196) and added Trazodone to assist with Plaintiff's sleep (see Tr. 1197). In February 2021, Plaintiff again reported "good day and bad days" and indicated that his family "press[ed] his buttons." (Tr. 1198.) The provider noted irritability, circumstantial thoughts, and ruminations (see Tr. 1202), and increased Trazodone at Plaintiff's request "for optimal sleep" (Tr. 1203).

Beginning in March 2021, Plaintiff's mental symptoms increased largely due to a worsening in his physical health. At his March follow-up visit, Plaintiff denied depression, but told Dr. Hisada his medical providers had diagnosed him with rheumatoid arthritis ("RA"), and that he had been more irritable due to his mother's boyfriend visiting the house and the denial of his SSI application. (See Tr. 1205.) Dr. Hisada recorded a "slightly restricted" affect which appeared "irritable at time[s] with his mother" (Tr. 1208 (emphasis added)), and changed Plaintiff's citalopram to sertraline (see Tr. 1209). Two months later, Plaintiff reported that a bacterial infection had required hospitalization, a wound vacuum-assisted closure ("VAC") device, and a peripherally inserted central catheter ("PICC") line for intravenous antibiotics, as well as that his rheumatologist had prescribed opioids for Plaintiff's RA pain. (See Tr. 1212.) Plaintiff's mother reported that Plaintiff "ha[d] been depressed," had "abused dextromethorphan a few times since [his] last visit," had an "altercation with his

grandmother," and "ha[d] been throwing things[ and] slamming
doors." (Id.) Dr. Hisada found the "[e]xam [] notable for
irritability" and Plaintiff's use of "profanity," and noted that
"[t]here ha[d] been significant worsening since the last visit,
which coincided with having admission for MSSA bacteremia," and
that "[o]ther psychosocial stressors include[d] pain secondary to
RA." (Tr. 1217.) As a result of those significant stressors, Dr.
Hisada increased Plaintiff's sertraline dose. (See Tr. 1218.)

In July 2021, Plaintiff "state[d] that things ha[d] been
rough," "that he ha[d] been depressed and pessimistic," that he had
"conflicts with his grandmother," and that he continued to abuse
dextromethorphan. (Tr. 1427.) Despite those reports, Dr. Hisada
found Plaintiff's affect "calm" and "down at times" (Tr. 1432
(emphasis added)), and increased his sertraline dose (see Tr.
1433). In the last treatment visit with Dr. Hisada in the record
in August 2021, Plaintiff remarked "that he ha[d] not been doing
good," because "[h]e had another surgery on his wound" and felt
"frustration against his grandmother." (Tr. 1448.) Although
Plaintiff complained of anhedonia, low energy, anxiety, and
irritability and denied "that he ha[d ] seen any change in his mood
since uptitration of sertraline, he vagu[e]ly agree[d] that he
m[ight] have been doing better compared to the last visit." (Id.
(emphasis added).) Dr. Hisada found Plaintiff's affect
"appropriate" but "restricted" (Tr. 1452), but noted that,

"although [Plaintiff] continue[d] to have irritability and anxiety, there ha[d] been <u>overall improvement</u> in depressive symptoms since up titration of sertraline" (Tr. 1453 (emphasis added)).

As this analysis makes clear, the ALJ did not merely "pick out a few isolated instances of improvement over a period of months . . . [and] treat them as a basis for concluding [Plaintiff] is capable of working," <u>Garrison v. Colvin</u>, 759 F.3d 995, 1017 (9th Cir. 2014), but rather acknowledged that, although family conflicts and physical health problems caused some setbacks in Plaintiff's mental well-being, overall, Plaintiff's mental health symptoms improved to a functional level after starting psychiatric treatment (<u>see</u> Tr. 16-18, 22-23). As the ALJ supported her finding of improvement with substantial evidence, no basis for remand exists. <u>See</u> <u>Knight v. Kijakazi</u>, No. 4:21CV865, 2023 WL 2556836, at *4-5 (W.D. Mo. Mar. 17, 2023) (unpublished) ("Only a selective reading of the record evidence, [the p]laintiff contends, supports the ALJ's description of an upward trajectory of [the p]laintiff's mental health conditions. [The p]laintiff argues her symptoms have continuously waxed and waned throughout the relevant period, without reliable signs of sustained improvement. . . . A close review of the evidence to which the ALJ cites[,] as well as other portions of the record, demonstrates an upward trend in [the p]laintiff's symptoms and functioning. . . . [T]his demonstrates substantial evidence supports the ALJ's finding that [the

42

p]laintiff's mental impairments improved over time."); <u>Lasharne W.</u>
<u>v. Commissioner, Soc. Sec. Admin.</u>, No. 21CV603, 2023 WL 2414497, at
*4 (D. Md. Mar. 8, 2023) (unpublished) ("[T]he ALJ noted that
treatment notes indicate [the p]laintiff's condition improved over
time. [The p]laintiff argues that because she endorsed symptoms of
depression during treatment and because she sometimes needed
adjustments to her medications, the ALJ erred in finding her not
credible. But the ALJ is permitted to find that a claimant's
symptoms do not render her totally disabled despite the fact that
her symptoms exist and are limiting to a certain extent. The ALJ
here based his decision on substantial evidence. Remand is not
warranted . . . ." (internal citations omitted)); <u>Lehman v.</u>
<u>Kijakazi</u>, No. 20CV938, 2022 WL 855365, at *8 (E.D. Wis. Feb. 25,
2022) (unpublished) (finding no merit to the plaintiff's argument
that the ALJ erred in determining the plaintiff's mental health
improved, because "the ALJ [did not] rely only on times where [the
plaintiff] reported improvements in his symptoms to find that he
could sustain full-time work[, but i]nstead, . . . cited both
periods of increased and decreased symptoms, and concluded that
[the plaintiff] could sustain full-time work within the limitations
stated in the RFC"); <u>Heath v. Commissioner of Soc. Sec.</u>, No.
1:18CV26, 2019 WL 101214, at *6 (S.D. Ohio Jan. 4, 2019)
(unpublished) ("[W]hile it is not uncommon for mental illness to
'ebb and flow,' it is not th[e c]ourt's role to reweigh evidence

43

that is subject to more than one interpretation. Contrary to [the plaintiff's] argument, the records [she] referenced . . . provide support for the ALJ's conclusion that [the p]laintiff's symptoms on the whole were not disabling but instead often demonstrated reported improvement." (internal quotation marks omitted)), recommendation adopted, 2019 WL 975173 (S.D. Ohio Feb. 28, 2019) (unpublished); Castle v. Commissioner of Soc. Sec., No. 15CV11021, 2016 WL 1069006, at *3 (E.D. Mich. Mar. 18, 2016) (unpublished) (rejecting the plaintiff's contention that "the ALJ erred in noting that [the p]laintiff had improvement with treatment, arguing that this was simply an indication of an ebb and flow of [the p]laintiff's symptoms," because "[t]he substantial evidence standard presupposes that there is a zone of choice within which the Commissioner may proceed without interference from the courts," and "[t]he ALJ properly considered the evidence of record, explained her decision, and . . . supported [her decision with] substantial evidence in the record" (internal quotation marks and citation omitted)).[9]

---

[9] Plaintiff additionally faults the ALJ for "fail[ing] to discuss the consistency of [Plaintiff's] statements [to his treating psychiatrist regarding ongoing mental impairment symptoms that continued despite treatment] with [Plaintiff]'s hearing testimony" in violation of SSR 16-3p. (Docket Entry 9 at 17-18 (citing Tr. 18, 22).) That contention falls short. The ALJ provided a lengthy summary of Plaintiff's hearing testimony (see Tr. 21-22), and discussed Plaintiff's statements to his treating psychiatrist throughout the relevant period (see Tr. 16-18, 22-23). The ALJ expressly noted that Plaintiff's hearing testimony that "he had not used dextromethorphan since November or December 2020" conflicted with his statements to Dr. Hisada in 2021 that he continued to abuse the substance. (Tr. 23; see also Tr. 59-60, 1212, 1427, 1448.) The ALJ also found that, "although [Plaintiff ] suggested he would be unable to tolerate less than even occasional interaction with coworkers and supervisors and would fail to (continued...)

In short, Plaintiff's third and final assignment of error misses the mark.

### III.  CONCLUSION

Plaintiff has not established errors warranting remand.

**IT IS THEREFORE RECOMMENDED** that the Commissioner's decision finding no disability be affirmed, and that this action be dismissed with prejudice.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

June 27, 2023

---

[9] (...continued)
follow directions during a workday, the record evidence, as discussed [earlier in the ALJ's decision] d[id] not support such extensive and additional limitations." (Tr. 23.) The ALJ thus satisfied her obligations under SSR 16-3p.

45